**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.**

Hayward Industries, Inc.,

        Plaintiff,

    v.

SmithCoVentures, LLC *d/b/a* Pool Supply
Delivery and Aqua Supercenter,

        Defendant.

**COMPLAINT
(Jury Trial Demanded)**

Plaintiff Hayward Industries, Inc. ("Hayward" or "Plaintiff") is suing Defendant SmithCo Ventures, LLC, *d/b/a* Pool Supply Delivery and *d/b/a* Aqua Supercenter ("Pool Supply Delivery" or "Defendant") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition by passing off in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement and unfair competition under North Carolina law; (5) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; (6) tortious interference with contract and business relations; (7) unjust enrichment; and (8) contributory and/or vicarious infringement. These claims arise out of Defendant's infringement of Hayward's trademarks in connection with Defendant's unlawful and unauthorized advertisement and sale of Hayward-brand products on the internet, including the sale of non-genuine, defective, non-compliant, damaged, and/or poor-quality products bearing the Hayward trademarks.

1

## PARTIES

1.      Plaintiff Hayward Industries, Inc, is a New Jersey corporation having its principal place of business located in Charlotte, North Carolina.

2.      Defendant SmithCoVentures, LLC, is a Florida limited liability company located at 1680 Fruitville Road, Suite 532, Sarasota, Florida 34236 and/or 2028 Bougainvillea Street, Sarasota, FL 34239.  SmithCoVentures does business as Pool Supply Delivery (using the website www.poolsupplydelivery.com) and/or as Aqua Supercenter (using the website www.aquasupercenter.com). Upon information and belief, Defendant is (or was) also known as SmithCo Holdings LLC, located at 18501 Murdock Cir., Ste 303, Port Charlotte, Florida 33948

3.      On information and belief Defendant also does business under, or advertises and sells products through, the following internet storefronts and websites:

- Poolsupplydelivery.com;
- Aquasupercenter.com;
- FB.com/aquasupercenter/shop;
- bonanza.com/aquasupercenter;
- bonanza.com/aqua_supercenter;
- ebay.com/str/aquasupercenteroutlet;
- shopping.google.com/store/aquasupercenter;
- waterclubusa.com;
- allpoolcleaners.com;
- allpoolheaters.com.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases), and 28 U.S.C. § 1367.  Plaintiff's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the state of North Carolina are substantially related

2

such that they form part of the same case or controversy under Article III of the United States Constitution.

5.    This Court has personal jurisdiction over Defendant because, on information and belief, it has purposefully availed itself of the privilege of doing business in North Carolina and has engaged in significant contacts with North Carolina, including significant and regular sales, shipments, distribution and/or offers thereof for infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents.  Defendant has engaged in these tortious activities with the knowledge that Hayward is located in North Carolina and will be harmed by Defendant's actions in North Carolina.

6.    Defendant has created interactive online "storefronts," such as PoolStoreDelivery.com and Aquasupercenter.com, and advertises across several other e-commerce platforms such as Walmart, Google, Facebook, and other national advertising and sales platforms. Through these interactive online stores, Defendant actively advertises, markets, sells, ships, and distributes infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents through the regular course of business.  Defendant does not place any geographic restrictions on who can buy its products from these internet retail sites, and, as such, these products and the ads for them are made available to residents of North Carolina as well as to residents of other states. For example, as seen below in the screenshots from Defendant's website, Defendant holds itself out as a "national" pool supply store and claims to have shipped over 5 million orders since its inception in 2004. Defendant also claims to ship to every U.S. state.

3

## About Us

Pool Supply Delivery is an award winning National Discount Swimming Pool Supply Superstore. PoolSupplyDelivery.com is proud to be family owned and operated for over 20 years.

Founded in 2004 - with over 5 million orders shipped and counting! We pride ourselves on amazing customer support, fast shipping and the quality products from key brands such as Hayward, Zodiac, Pentair, Jandy, Waterway and much more.

We are owned and operated by a Swimming Pool Holding Company which we use to run different brands. In addition to our multiple online websites; we sell through all marketplaces such as Walmart, Google, Facebook, etc.. We also own and operate a swimming pool service & repair business operating out of Sarasota, FL and services all of Lakewood Ranch, Bradenton, Anna Maria Island, Longboat Key, Siesta Key, Sarasota, Osprey, Venice and more.

## Why Choose Us

- **Exceptional value** – Brand-new, name-brand equipment, chemicals, and accessories at competitive prices, backed by our price guarantee.

- **Convenient delivery** – Free same-day shipping for most products, ensuring your pool stays in perfect condition without interrupting your day.

- **Dedicated expertise** – Each customer receives a personal Pool Concierge, available via call or text. We perform a full equipment check and keep records to streamline future orders.

- **Extensive selection** – Hundreds of products, from pumps and heaters to chemicals and pool games — all shipped with care and attention.

## Our Promise

We pride ourselves on combining **local friendliness with global efficiency**. Though digital-first, our roots are firmly in personal care. Our team draws on experience from traditional pool stores, blending human expertise with innovative ordering and fulfillment systems.

https://poolsupplydelivery.com/about-us/ (accessed February 2, 2026).



deliver the highest quality pool equipment, chemicals, and parts directly to your door at wholesale prices.

Pool Supply Delivery offers over 15,000 products on it's website and over 2,000 products in it's stores. We ship to all of the continental United States. We also ship to Hawaii, Purto Rico, Canada and select Carribean Islands but additional shipping charges may apply. Please contact us for a quote. We also offer local delivery to Sarasota, Bradenton, Lakewood Ranch and other surrounding areas around our headquarters based out of Sarasota, FL.

https://poolsupplydelivery.com/about-pool-supply-delivery/ (accessed February 2, 2026).

7.      In other words, via PoolSupplyDelivery.com, AquaSuperCenter.com, and various storefronts on third-party e-commerce platforms (collectively, the "Interactive Storefronts"), Defendant advertises and sells the trademark infringing products to consumers in North Carolina. Defendant continues to engage in these actions despite being put on notice of their illegal conduct and the prospect of this action.

4

8.     Defendants' activities in North Carolina have been significant, and they have regularly advertised and sold products improperly bearing Hayward's trademarks to North Carolina and continue to do so.

9.     Further, despite having been put on notice of their infringing activities several times by Hayward (who Defendant thus knows or should know is located in North Carolina), Defendant continues to engage in its tortious activities and to sell its infringing products into North Carolina. Defendant intended its sales, distribution, shipping, marketing, and advertising of infringing goods to reach North Carolina and to affect Hayward's business operations in North Carolina, including but not limited to, causing confusion, mistake, or deceit among Hayward's customers and loss of good will in North Carolina.

10.     Venue is proper in this District under, without limitation, 28 U.S.C. § 1391(b)(2)-(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### A.     Hayward's Products and Associated Trademarks

11.     Hayward is a century-old company that, for at least 60 years, has developed, manufactured, marketed, and sold cutting edge, environmentally responsible, and technologically advanced pool and spa equipment ("Hayward Products").  Over the years, Hayward has expanded its pool and spa equipment business into both residential and commercial markets and both in-ground and above ground pools and spas worldwide.  Such products include, for example, variable speed pumps, heaters, filters, robotic pool cleaners, light fixtures, salt water chlorination systems, and other products for running and maintaining swimming pools and spas. Hayward sells Hayward Products in the United States through Amazon.com, among other national online retail platforms,

5

and through a network of authorized internet and brick and mortar resellers, distributors, and retailers (collectively "Authorized Sellers").

12. Hayward devotes a significant amount of time, energy, and resources to protecting the value of the Hayward brand, products, name, and reputation. By distributing Hayward Products exclusively through Authorized Sellers, Hayward is able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the Hayward brand. Safety, quality, customer support, and innovation are fundamental to a customer's decision to purchase a product in the highly competitive pool and spa equipment industry.

13. To promote and protect the Hayward brand, Hayward has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to:

- HAYWARD® (U.S. Trademark Reg. Nos. 3,969,301 and 1,058,211);

- EXPERT LINE® (U.S. Trademark Reg. No. 6,113,689);

- H® (U.S. Trademark Reg. Nos. 4,016,737 and 1,132,980);

- SUPER PUMP® (U.S. Trademark Reg. No. 1,518,655);

- MAXFLO® (U.S. Trademark Reg. No. 6,048,151);

- TRISTAR® (U.S. Trademark Reg. No. 3,190,201);

- POWER-FLO® (U.S. Trademark Reg. No. 2,075,752);

- AQUA RITE® (U.S. Trademark Reg. Nos. 3,704,835);

- GOLDLINE® (U.S. Trademark Reg. No. 5,726,797);

- PRO LOGIC® (U.S. Trademark Reg. No. 3,538,131);

- OMNI® (U.S. Trademark Reg. No. 5,724,837 and 7,426,544);

- OMNIHUB® (U.S. Trademark Reg. No. 5,933,305);

- OMNILOGIC® (U.S. Trademark Reg. No. 7,426,540);

- PERFLEX® (U.S. Trademark Reg. No. 2,055,038);

- COLORLOGIC® (U.S. Trademark Reg. Nos. 2,865,720);

- TURBO CELL® (U.S. Trademark Reg. No. 3,156,434);

- T-CELL-3® (U.S. Trademark Reg. No. 6,085,072);

- T-CELL-9® (U.S. Trademark Reg. No. 6,085,074);

- T-CELL-15® (U.S. Trademark Reg. No. 6,085,079)

(collectively, the "Hayward Trademarks").

14.     The registrations for the Hayward Trademarks are valid and in full force and effect.

15.     Hayward first registered the HAYWARD® mark in 1977 and has actively used the mark since at least as early as 1956.  A number of the trademarks listed above have been in use and/or registered for twenty years or more and are incontestable.

16.     Hayward actively uses all of the Hayward Trademarks in commerce throughout the United States to advertise, market, offer for sale, and sell the Hayward Products.

17.     Consumers recognize the Hayward Trademarks as being associated with innovative, safe, and high-quality pool and spa equipment.

18.     Because of the innovation, safety, and quality of Hayward products, consumers trust the Hayward brand and associate the Hayward name with innovative, safe, and high-quality pool and spa equipment.

19.     For all of these reasons, the Hayward Trademarks are widely recognized by the general consuming public of the United States and Hayward is recognized as the source of products bearing the Hayward Trademarks.

7

20.     Due to the superior quality and exclusive distribution of Hayward Products, and because Hayward is uniquely recognized as the source of these high quality products, the Hayward Trademarks have considerable value.

**B.     Hayward Has Implemented Strict Quality Controls to Protect the Value of the Hayward Trademarks, and to Ensure Customers Receive the Genuine, High Quality Products They Expect from Hayward**

21.     Recognizing the risks to consumers and to the Hayward reputation caused by the sale of poor quality Hayward Products, Hayward has implemented quality controls that apply to Hayward Products sold in both brick-and-mortar stores and online.  Such controls help to protect consumers and the value and goodwill associated with the Hayward brand.

22.     One goal of these quality controls is to ensure that consumers who purchase Hayward Products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Hayward name – including quality and reliability.

23.     The quality controls also seek to minimize the likelihood that poor quality products will reach consumers.  Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and protects the value and goodwill associated with the Hayward brand.

24.     Hayward abides by its quality control requirements and requires its Authorized Sellers to abide by the quality control requirements.

25.     Hayward's ability to exercise these quality controls is essential to the integrity, safety, and quality of Hayward Products, as well as to the value of the Hayward Trademarks and other intellectual property.

8

**C.** **Authorized Sellers Are Required to Adhere to Hayward's Quality Control and Customer Service Requirements**

26.     Hayward maintains strict quality controls over Hayward Products by selling its products to customers through its network of Authorized Sellers.

27.     Hayward permits Authorized Sellers to sell Hayward Products in specific channels (online v. brick and mortar) and requires Authorized Sellers to abide by applicable authorized seller policies and agreements relating to quality controls, customer service, and other sales practices (collectively, the "Hayward Policies.")

28.     The Hayward Policies limit to whom and where Authorized Sellers may sell Hayward Products online. For example, Hayward permits a sub-class of Authorized Sellers ("Authorized Resellers") to sell Hayward Products only to end users. Authorized Resellers are specifically prohibited from selling products to other resellers or to anyone who intends to resell the products. In that way, Hayward can maintain its quality controls because it can track its Authorized Sellers and Authorized Resellers to ensure that they are abiding by the Hayward Policies.[1]

29.     Authorized Sellers are also prohibited from selling products through unauthorized channels, such as certain third-party online marketplaces like Amazon, eBay, or Walmart.com, without prior written consent from Hayward.

30.     These requirements are essential to Hayward's ability to exercise its quality controls over Hayward Products because they allow Hayward to track which of its Authorized Sellers are approved to sell online and where its Authorized Sellers are selling online. If a quality

---

[1] For the sake of brevity, and unless otherwise noted, the term "Authorized Sellers" will be used to refer to the entire panoply of sellers in Hayward's distribution chain, including Authorized Resellers and Authorized Online Resellers.

issue arises through an online sale, Hayward can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately. Hayward is unable to take such action against unauthorized sellers because, for example, it does not always know who these sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

31. In addition to limiting where and how Authorized Sellers can sell Hayward Products, the Hayward Policies also require Authorized Sellers to adhere to Hayward's quality control requirements related to the inspection, handling, and storage of Hayward Products.

32. To ensure that customers receive the genuine and high-quality products they expect from Hayward, the Hayward Policies require that Authorized Sellers inspect all Hayward Products for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory. Authorized Sellers are prohibited from selling damaged or defective products. Further, to assist Hayward in identifying any product quality issues, Authorized Sellers are required to report any defects to Hayward.

33. The Hayward Policies also require that Authorized Sellers comply with all instructions provided by Hayward regarding product storage, handling, and shipping. This requirement helps ensure that Hayward Products are stored properly and are not damaged before being shipped to the consumer.

34. To avoid consumer confusion and ensure that customers receive genuine Hayward Products, Authorized Sellers are prohibited from relabeling, repackaging, or altering Hayward Products. Authorized Sellers must not remove, translate, or modify the contents of any label or literature on or accompanying Hayward Products. Further, Authorized Sellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Hayward Products, including any serial number, UPC code, batch or lot code, or other identifying information.

10

35. Hayward also ensures that consumers receive safe products by requiring that Authorized Sellers assist with recalls and other consumer safety information efforts.

36. The Hayward Policies also require that Authorized Sellers provide certain services to their customers. Authorized Sellers must familiarize themselves with the special features of all Hayward Products kept in their inventory. This requirement ensures that Authorized Sellers are uniquely qualified to advise customers on the selection and safe use of Hayward Products.

37. Following the sale of Hayward Products, Authorized Sellers supply ongoing support to end-user consumers and are required to provide customer service and support by promptly responding to consumer inquiries.

38. Hayward's quality control requirements are legitimate and substantial and have been implemented so that Hayward can control the quality of goods manufactured and sold under the Hayward Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Hayward Trademarks.

39. Hayward's quality control requirements are also material in that they are designed to protect consumers and prevent them from receiving poor quality products. Consumers would find it material and relevant to their purchasing decision to know whether a Hayward Product they were considering buying was being sold by an Authorized Seller who is subject to Hayward's quality control requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, Hayward's quality controls and over whom Hayward is unable to exercise its quality controls.

**D. Genuine Hayward Products Come with Coverage under Hayward's Warranty Program; Defendant's Products Do Not**

40. Hayward Products purchased from Authorized Sellers also come with coverage under Hayward's warranty program (the "Warranty Program"). Under the Warranty Program,

11

Hayward warrants to the original purchaser of Hayward Products that the product and its components will be free from defects in materials and workmanship for a specific period of time set forth by the warranty applicable to the given product.

41.  Hayward extends Warranty Program coverage only to products that were sold by Authorized Sellers that are subject to Hayward quality controls.  Because products sold by unauthorized sellers are not subject to Hayward quality controls and Hayward cannot ensure the quality of such products, Hayward does not extend Warranty Program coverage to products sold by unauthorized sellers, such as Defendants.

42.  Hayward tells consumers that "[b]ecause Hayward cannot control the quality of products sold by unauthorized sellers, our limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller, unless otherwise prohibited by law." Here is a screenshot of the warranty page (annotated) on Hayward's website:



43.  The Warranty Program is a material component of genuine Hayward Products. Consumers who purchase Hayward Products with the Warranty Program receive the peace of mind that they are receiving a high-quality product that Hayward stands behind the product, and that if a defect occurs, they will have the ability to have the product repaired or refunded.

**E.** **Defendant Is Not Authorized Sellers and, without Permission, Is Selling Products Bearing the Hayward Trademarks**

44.     To ensure compliance with Hayward's quality controls and to guard against consumer confusion, Hayward regularly audits its Authorized Sellers, particularly those who are authorized to sell Hayward Products online.

45.     In the course of monitoring online listings of Hayward Products, Hayward discovered a high volume of products bearing the Hayward Trademarks that Pool Supply Delivery is using, without permission, selling on the Interactive Storefronts. One example is pasted below.



https://poolsupplydelivery.com/hayward-super-pump-vs-variable-speed-pool-pump?searchid=0&search_query=pump  (accessed February 2, 2026)

46.     The example above shows that the product appears to be a genuine Hayward pool pump, with the Hayward trademark used prominently in the headline.  Further, appearing at the bottom of the page, under the heading "Product Notes/Warranty/Manufacturer's Website" is a link to Hayward's website, further creating the (false) impression that the pump is a genuine Hayward Product:

Motor Design: Totally-Enclosed, Permanent Magnet

Speed Range: 600 - 3000 RPM

Voltage: 230V Single Phase

Port Sizes: 1.5"

**»» Product Notes / Warranty / Manufactures Website:**

Manufacturer's Website

https://poolsupplydelivery.com/hayward-super-pump-vs-variable-speed-pool-pump?searchid=0&search_query=pump (accessed February 2, 2026).

Consumers are likely to be misled by this advertisement and not understand that Pool Supply Delivery is the seller but is not affiliated with, sponsored by, or associated with Hayward.

47.     As seen in the example above, the listed product appears in all respects to be a genuine Hayward Product, and the Hayward Trademarks are used in the headline.  A consumer may be misled by this advertising and not notice that the seller is actually Pool Supply Delivery.

48.     Another of Defendant's problematic online listings (from the aquasupercenter.com website), also advertising for sale what appears to be a genuine Hayward Product (but is not), is featured below.

14



https://aquasupercenter.com/hayward-aquarite-40k-gallon-salt-system-aqr15?searchid=0&search_query=hayward+salt+cell (accessed February 2, 2026)

49. Given the many unscrupulous resellers, like Defendant, selling products online today, an Authorized Seller wishing to sell Hayward Products online must first be vetted and approved by Hayward to be an authorized online reseller ("Authorized Online Reseller") and must abide by Hayward's Authorized Online Reseller Policy and Online Reseller Agreement. Authorized Online Resellers may sell Hayward Products only on websites and through marketplace storefronts that Hayward has specifically approved, which again allows Hayward to have full visibility and oversight over those parties authorized to sell their products online.

50. Defendant is not an Authorized Seller of Hayward Products and is not subject to, and does not comply with, Hayward's Authorized Seller requirements or the Hayward Policies.

51.     In particular, Defendant is not authorized to sell Hayward Products online and does not comply with the additional quality control requirements Hayward imposes on its authorized online resellers.

52.     Defendant applied for participation in Hayward's Authorized Seller and/or Authorized Online Reseller programs. Hayward reviewed Defendant's application pursuant to its established quality controls standards and reseller policies. Following this review, Hayward rejected Defendant's application for all websites and storefronts. As such, Defendant has not agreed to be bound by the Hayward Policies and Hayward has not authorized Defendant.

53.     As set forth below, multiple consumers have complained about the products Defendant has sold to them and that Defendant is selling used and poor quality products.

54.     Despite not being approved as an Authorized Seller or Authorized Online Reseller and not meeting the quality control requirements Hayward imposes on its Authorized Sellers and Authorized Online Resellers, Defendant has sold, and continues to sell, products bearing the Hayward Trademarks on their Interactive Storefronts.

55.     Indeed, Defendant's product listings use the Hayward Trademarks in multiple places, including on photos of the products, in the headline, and in the description of the product, as shown in the examples above.

**F.     Defendant Does Not Abide by Hayward's Quality Controls and Customer Service Requirements**

56.     Defendant has not abided by Hayward's quality control measures that are imposed upon genuine Hayward Products sold by Authorized Sellers

57.     Such quality control measures include, for example, listing the seller's email address and other contact information on their Amazon storefront (so that the seller can be contacted by the consumer or by Hayward to address complaints, defects, etc.).

16

58. Hayward's quality control policies also include, *inter alia*, the following measures:

- Inspection of Hayward Products for damage, defects, or tampering and removal or recall of such products.

- Training needed to accurately describe, demonstrate, and sell products, including training on product selection and safe use.

- Customer service and product support requirements, including taking appropriate steps to address complaints and negative reviews from customers.

- Assisting with product recalls and investigation of quality issues.

59. Defendant has not abided by the above-listed measures, among others, thus interfering with Hayward's quality controls. As a result, Hayward is unable to audit Defendant to ensure compliance with Hayward's quality controls and/or close its account if Defendant fails to comply with Hayward's quality control requirements.

**G    Defendant Is Infringing the Hayward Trademarks by Selling Products Bearing the Hayward Trademarks that Do Not Come with Warranty Program Coverage, and that Are Not Subject to, Hayward's Quality Controls and Customer Service Requirements**

60. The products Defendant sells bearing the Hayward Trademarks fail to adhere to the extensive and legitimate quality controls that Hayward exercises over Hayward Products to protect consumers and Hayward's brand goodwill.

61. The products sold by Defendant do not come with Warranty Program coverage.

62. The products sold by Defendant are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

63. Because the products Defendant sells do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and

customer service requirements, the products Defendant sells are materially different from genuine Hayward Products.

64. Because the products Defendant sells do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are not genuine Hayward Products.

65. Defendant's unauthorized sale of products bearing the Hayward Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendant believe they are purchasing genuine Hayward Products, when, in fact, they are not.

66. Defendant's unauthorized sale of products bearing the Hayward Trademarks infringes on the Hayward Trademarks and diminishes their value.

67. Despite these facts, Defendant has sold, and continues to sell, products bearing the Hayward Trademarks through the Interactive Storefronts without Hayward's consent.

68. Through the Interactive Storefronts, Defendant has advertised and marketed infringing products bearing the Hayward Trademarks to consumers in North Carolina.

69. Through its Interactive Storefronts, Defendant advertises to residents and/or has sold to consumers in North Carolina.

70. On information and belief, through its Interactive Storefronts, Defendant has advertised and/or sold infringing products bearing the Hayward Trademarks to North Carolina through the regular course of business.

**H. Hayward Has Attempted to Stop Defendant's Illegal Sale of Hayward Products But Defendant Continues to Willfully Infringe on the Hayward Trademarks**

71. After Hayward discovered products bearing the Hayward Trademarks being illegally sold on the Interactive Storefronts, Hayward investigated the storefront to determine who was operating the storefront.

18

72.     After conducting an investigation, Hayward identified Defendant SmithCo Ventures LLC as the owner or operator of the Interactive Storefronts.

73.     Hayward sent two cease-and-desist letters to Defendant notifying it of its illegal conduct.   In those letters, Hayward warned Defendant that it is infringing the Hayward Trademarks, tortiously interfering with Hayward's contracts, and causing harm to Hayward and its Authorized Reseller.   Hayward demanded that Defendant immediately stop selling products bearing the Hayward Trademarks. *See* **Exhibit 1,** Cease and Desist email from B. Griffin to Chris Smith of SmithCoVentures, dated September 3, 2025, and **Exhibit 2**, Cease and Desist letter from S. Halpern to Chris Smith of SmithCoVentures, dated December 15, 2025.

74.     Defendant did not comply with either of Hayward's demands and continues to sell products bearing the Hayward Trademarks on its Interactive Storefronts.

75.     As discussed above, the products that Defendant sells are not genuine Hayward Products and are materially different from genuine Hayward Products because they are not subject to, interfere with, and do not comply with Hayward's quality controls.

76.     By continuing to sell non-genuine products bearing the Hayward Trademarks, Defendant has interfered with Hayward's ability to exercise control over products being sold bearing the Hayward Trademarks.

77.     Defendant has also misled, and continues to mislead, consumers into believing they are purchasing genuine Hayward Products that comply with Hayward's quality controls when, in fact, they do not.

78.     Defendant's actions infringe the Hayward Trademarks.

79.     Further, Defendant's disregard of communications from Hayward and continued selling of non-genuine products, despite being informed of their unlawful conduct, demonstrates that it is acting intentionally, willfully, and maliciously.

## I.      Defendant Is Tortiously Interfering with Hayward's Agreements With Its Authorized Sellers

80.     Hayward's agreements with its Authorized Sellers prevent those Authorized Sellers from selling Hayward Products to third parties who are not Authorized Resellers of Hayward Products but intend to resell the products anyway.

81.     Defendant was informed of this prohibition in Hayward's previous cease-and-desist emails and letters. That correspondence informed Defendant that the agreements between Hayward and Hayward's Authorized Sellers prohibit Authorized Sellers from selling Hayward Products to any person or entity that is not an Authorized Seller but intends to resell the products.

82.     Hayward also informed Defendant that by purchasing Hayward Products from an Authorized Seller for purposes of resale, it was causing a breach of the agreements between Hayward and its Authorized Sellers and interfering with Hayward's agreements and business relationships.  *See* Exhibits 1 and 2.

83.     Hayward also warned Defendant that if it continued to acquire Hayward Products from Hayward's Authorized Sellers for the purpose of reselling them, it would be liable for tortiously interfering with Hayward's contracts and/or business relationships.  *See* Exhibit 2.

84.     Despite being so warned, Defendant has continued to acquire Hayward Products from Hayward's Authorized Sellers with the intent to resell them.

85.     Upon information and belief, Defendant does not disclose to Authorized Sellers that they intend to resell the Hayward Products it purchases from Authorized Sellers.

20

86. Defendant has willfully and knowingly induced and is continuing to induce unknown Authorized Sellers to breach their agreements with Hayward so that they can acquire Hayward Products and unlawfully infringe upon the Hayward Trademarks by reselling the products.

**N.     Hayward Has Suffered Significant Harm As a Result of Defendant's Conduct**

87. The unauthorized sale of products bearing the Hayward Trademarks through unauthorized sellers, such as Defendant, has caused significant harm to the Hayward brand.

88. When consumers receive non-genuine, damaged, or poor quality products from unauthorized sellers, such as Defendant, those consumers are likely to associate that negative experience with Hayward. In addition, because the unauthorized product is not covered under Hayward's Warranty Program, consumers will not receive a replacement or repair under warranty, further aggravating those consumer. As such, Defendant's ongoing sale of unauthorized products bearing the Hayward Trademarks harms Hayward and the Hayward brand.

89. Disgruntled consumers who have purchased unauthorized products from Defendant's Interactive Storefronts or have problems getting warranty coverage have complained, or are likely to complain, on online review forums and, due to the confusion caused by Defendants, have erroneously associated the unfortunate experience, or are likely to associate the experience, with Hayward. Representative examples of consumer complaints confusing Defendant's infringing products with Hayward's genuine, warranty-protected products are shown below.



★ **2.1** ⓘ

**All reviews**

110 total · **Write a review**

| | | |
|---|---|---|
| ☐ 5-star | ████████ | 63% |
| ☐ 4-star | ● | 6% |
| ☐ 3-star | ● | 6% |
| ☐ 2-star | | 0% |
| ☐ 1-star | ███ | 25% |

Advertisement

How Trustpilot labels reviews ↗

---

US · 1 review

★☆☆☆☆

**The web site does not complete transactions**

The web site does not complete transactions and the phone number on the web site has been disconnected. The web site should be taken down.

October 13, 2023 · Unprompted review

👍 Useful   ↗ Share   ⚑

---

**RO** **Rose**
US · 3 reviews

Updated Jun 10, 2023

★☆☆☆☆

**Ordered Hayward super pump for $699.00...**

Ordered Hayward super pump for $699.00 plus free shipping. On Amazon. But they charged my card $747.00 . They don't answer phones so I am contacting BBB to report them .going to return this item for full refund. So buyer beware. Amazon can't help me cause they're 3rd party.i have to contact them. Just opened my box. They didn't send me the RIGHT pump.they think they can send whatever they want. IF they didn't have right one then they should of told me. Can't wait for BBB to get back to me. They r rated F at BBB and not recommended by BBB.

June 9, 2023 · Unprompted review

👍 Useful   ↗ Share   ⚑

---

**a** **antoine et isabel Saulnier**
US · 2 reviews

Feb 22, 2023

★☆☆☆☆

https://www.trustpilot.com/review/poolsupplydelivery.com (accessed February 4, 2026).



Jeff B.
Hubert, NC

0    1    0

★☆☆☆☆    Aug 27, 2020

Placed an order on a stock item that was to ship within 24 hours, a week later, called them after I have emailed twice with no answer and talked to somebody- NOT IN THE U.S., was told it was not available. They would issue an refund. After looking online- their google reviews are full of the same story with people not getting refunded. DON'T order from them!!!

Helpful 0    Thanks 0    Love this 0    Oh no 0

Rich D.
Northport, NY

0    8    0

★☆☆☆☆    Oct 7, 2012

First to Review

Purchased a control unit online for Jandylink controller around $400.00, turned out the controller was not the issue and tried to return the unit to them.
Very protracted transaction, have to fill out form from their website, they are deducting a 30% restocking fee for this controller..... thats $120.00 !!!!! from the return which was never opened from the original shipping package...........
Still have not received the credit card return after they received 2 weeks ago
would never do business with again............
check out the link to the Better Business Bureau they have over 12 complaints

https://www.yelp.com/biz/aqua-supercenter-sarasota-2?start=20 (accessed February 4, 2026).

90.    Hayward has suffered, and will continue to suffer, significant monetary harm as a result of Defendant's actions, including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

91.    Hayward has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

92.     Hayward is entitled to injunctive relief because Defendant will continue to unlawfully sell Hayward Products and infringe on the Hayward Trademarks, causing continued irreparable harm to Hayward's reputation, goodwill, relationships, intellectual property, and brand integrity.

93.     Defendant's conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

94.     Defendant's willful violations of the Hayward Trademarks and continued pattern of misconduct demonstrate intent to harm Hayward.

**FIRST CAUSE OF ACTION**
**Trademark Infringement in Violation of Section 32 of the Lanham Act,**
**15 U.S.C. §§ 1114**

95.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     Hayward is the owner of the Hayward Trademarks.

97.     Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

98.     The Hayward Trademarks are valid and in full force and effect.

99.     Defendant willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

100.    The products Defendant sells bearing the Hayward Trademarks are not authorized for sale by Hayward.

101.    The products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

24

102. Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products.

103. Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

104. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

105. The products Defendant sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

106. Because the products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are materially different from genuine Hayward Products.

107. Because the products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are not genuine Hayward Products.

108. Defendant's unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

109. Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

110.    Defendant's' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers for sale are genuine Hayward Products when, in fact, they are not.

111.    Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

112.    Defendant's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

113.    As a proximate result of Defendant's actions, Hayward has suffered, and continues to suffer, immediate and irreparable harm.  Hayward has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

114.    Hayward is entitled to recover its damages caused by Defendant's infringement of the Hayward Trademarks and disgorge Defendant's' profits from its willfully infringing sales and unjust enrichment.

115.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Hayward will suffer irreparable harm.

116.    Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

**SECOND CAUSE OF ACTION**
**Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

117.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

118.    Hayward is the owner of the Hayward Trademarks.

119.    The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

120.    Defendant has willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

121.    The products Defendant advertises and sells bearing the Hayward Trademarks are not authorized for sale by Hayward.

122.    The products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

123.    Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products..

124.    Hayward abides by these quality controls and requires all of its Authorized Sellers, including its Authorized Online Resellers, to abide by these quality controls.

125.    Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

27

126.    The products Defendant advertises and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

127.    Because the products Defendant advertises and sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are materially different from genuine Hayward Products.

128.    Because the products Defendant advertises and sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant advertises and sells are not genuine Hayward Products.

129.    Defendant's unauthorized advertisement and sale of products bearing the Hayward Trademarks interfere with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

130.    Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

131.    Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants advertise and offer for sale are genuine Hayward Products when, in fact, they are not.

28

132.    Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant advertises and offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

133.    Defendant's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

134.    As a proximate result of Defendant's actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

135.    Hayward is entitled to recover its damages caused by Defendant's infringement of the Hayward Trademarks and disgorge Defendant's profits from their willfully infringing sales and unjust enrichment.

136.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Hayward will suffer irreparable harm.

137.    Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

## THIRD CAUSE OF ACTION
### Unfair Competition in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by Passing Off

138.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

29

139. Hayward and Defendant compete in the market for swimming pool equipment, such as pumps, salts chlorination systems and salt cells, filters, pool lights, among others.

140. Hayward advertises, offers for sale, and sells in commerce pool products such as pumps bearing the Hayward Marks. As seen above, the Hayward Marks, or confusingly similar marks, appear on packaging, labels, and literature included with purchased infringing products and also in online advertising and marketing materials used in connection with the sale and marking of pumps bearing the Hayward Marks.

141. As described above, Defendant advertises, offers for sale, and sells pool products that bear or are promoted with one or more of the Hayward Marks but that are materially different from genuine HAYWARD salt cells. Hayward has not authorized this conduct.

142. Such conduct constitutes passing off in violation of Section 43(a) of the Lanham Act.

143. Defendant's passing off is likely to cause and already has caused confusion, mistake, or deception as to the source or origin of the pool products bearing the Hayward Marks and has diverted sales from Hayward.

144. Defendant's conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

145. Defendant was notified of their infringement and violation of Hayward policies but continued to sell the unauthorized products bearing the Hayward Marks. Accordingly, Defendant's conduct, as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

30

146. By reason of Defendant's misconduct, Hayward has suffered, and will continue to suffer, monetary damages, and loss of goodwill.

**FOURTH CAUSE OF ACTION**
**Trademark Infringement and Unfair Competition**
**under North Carolina Common Law**

147. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

148. This claim arises under the laws of the State of North Carolina.

149. Hayward is the owner of the Hayward Trademarks.

150. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

151. The Hayward Trademarks are distinctive and widely recognized by the consuming public. Hayward Products are sold and purchased on internet retail platforms like Amazon.com and through Hayward's network of Authorized Sellers throughout the United States, including North Carolina.

152. Hayward is widely recognized as the designated source of goods bearing the Hayward Trademarks.

153. Defendant willfully and knowingly used, and continues to use, the Hayward Trademarks in interstate commerce for the purpose of advertising, promoting and selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

154. Hayward has not authorized Defendant to sell products bearing the Hayward Trademarks or to use the Hayward Trademarks in any manner.

155. The products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

31

156. Hayward has established and implemented legitimate and substantial quality controls that apply only to genuine (authorized) Hayward Products.

157. Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

158. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

159. The products Defendant sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

160. Because the products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are materially different from genuine Hayward Products.

161. Because the products Defendant sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are not genuine Hayward Products.

162. Defendant's unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

163. Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers are subject to and abide by Hayward's quality controls when, in fact, they do not.

164. Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers for sale are genuine Hayward Products when, in fact, they are not.

165. Defendant's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendant offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

166. Defendant's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

167. As a proximate result of Defendant's actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

168. Hayward is entitled to recover punitive damages because Defendant has acted with malice and aggravated and egregious fraud.

169. Hayward is entitled to recover its attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Violation of North Carolina Unfair and Deceptive Trade Practices Act
### § 75-1.1, *et seq.*

170. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

171. Plaintiff is the owner of the Hayward Trademarks.

172. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

33

173. Defendant willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising promoting, and selling products bearing the Hayward Trademarks without the consent of Hayward.

174. Defendant's advertisements and promotions of products unlawfully using the Hayward Trademarks have been disseminated to the relevant purchasing public, including consumers in North Carolina.

175. At all relevant times, Defendant was engaged in commerce in the State of North Carolina and was affecting North Carolina commerce.

176. Defendant uses the Hayward Trademarks with the intent that consumers will rely on Defendant's use of the Hayward Trademarks and believe that Defendant is selling genuine Hayward products.

177. The products Defendant advertises, promotes, and sells bearing the Hayward Trademarks are not authorized for sale by Hayward.

178. Hayward has established legitimate and substantial quality control procedures over Hayward products.

179. Hayward abides by these quality control procedures and requires all of Authorized Sellers to abide by these quality controls.

180. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality products that could harm them. When a consumer is deciding whether to purchase a product bearing the Hayward Trademarks, whether the product is subject to and abides by Hayward's quality controls would be relevant to the consumers' purchasing decision.

34

181.    The products Defendant advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements and do not come with Warranty Program coverage.

182.    Because the products Defendant advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are materially different from genuine Hayward products.

183.    The products Defendant sells are materially different from genuine Hayward products because they do not come with Warranty Program coverage and are not subject to Hayward's quality controls.

184.    Because the products Defendant advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendant sells are not genuine Hayward products.

185.    Defendant's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

186.    Defendant's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are subject to, and abide by, Hayward's quality controls and come with Warranty Program coverage when, in fact, they are not.

187.    Defendant's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers

because those unauthorized actions suggest that the products Defendant offers for sale are genuine Hayward products when, in fact, they are not.

188.    Defendant's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because those unauthorized actions suggest that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Hayward when, in fact, they are not.

189.    Defendant's unauthorized and deceptive use of the Hayward Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendant advertises using the Hayward Trademarks are genuine Hayward products that are subject to, and abide by, Hayward's quality controls requirement and come with benefits associated with authentic Hayward products, when, in fact, they do not.

190.    Defendant's unauthorized use of the Hayward Trademarks in advertising, and otherwise, infringes on the Hayward Trademarks.

191.    Defendant's use of the Hayward Trademarks in connection with the unauthorized advertising, promotion, and sale of Hayward products is an unconscionable, deceptive, and fraudulent business practice which violates N.C. Gen. Stat. § 75-1.1 ("UDTPA").

192.    Defendant misrepresents the Hayward products they sell as genuine Hayward Products by using the Hayward Trademarks on its product headlines and in the description of its products.

193.    Defendant is trying to pass off its products as genuine Hayward products or are falsely associating their products with Hayward.

194. Defendant deceptively and confusingly suggests to consumers that Hayward has authorized or sponsored the products that they are selling, or that Defendant is somehow affiliated with Hayward, when it is not.

195. Defendant's actions and conduct were intended to and did cause and continues to cause confusion among consumers as to the designation and source of the products Defendant sells.

196. Defendant's conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.

197. As a direct and proximate result of Defendant's unlawful, unfair, and infringement conduct, Hayward has suffered, and continues to suffer, immediate and irreparable harm. Hayward has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

198. Pursuant to N.C. Gen. Stat. § 75-1.1, Hayward is entitled to an injunction enjoining Defendant's unlawful conduct, and an award of treble damages and attorneys' fees. Unless enjoined by this Court, Defendant will continue to engage in unfair, unlawful, and misleading business practices as alleged in this complaint, in violation of the UDTPA. Hayward and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted. Hayward is entitled to a preliminary and permanent injunction.

199. Hayward has no adequate remedy at law for the injury alleged in this cause of action and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## SIXTH CAUSE OF ACTION
### Tortious Interference With Contract And Business Relations

200.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

201.     Hayward Products are sold exclusively through its network of Authorized Sellers, including Authorized Online Resellers.

202.     Hayward has entered into agreements with Authorized Sellers to sell Hayward Products. These agreements specifically prohibit Hayward's Authorized Sellers from selling Hayward Products to unauthorized resellers, such as the Defendant.

203.     Defendant has sold a high volume of Hayward Products through their Interactive Storefronts.

204.     Hayward has not itself sold any Hayward Products to the Defendant.

205.     Based on these facts, it is plausible and a reasonable inference that Defendant has purchased the Hayward Products it is reselling, and have resold, from one or more of Hayward's Authorized Sellers.

206.     The Defendant knew that Hayward's agreements with its Authorized Sellers prohibit Hayward's Authorized Sellers from selling Hayward Products to any seller who, such as Defendant, is not an Authorized Seller and intends to resell the products.

207.     Defendant had notice of this prohibition through the cease-and-desist letter they received from Hayward.

208.     Despite knowing of this prohibition, Defendant intentionally, knowingly and willfully interfered with Hayward's agreements with its Authorized Sellers by inducing the Authorized Sellers to breach their agreements and sell products to Defendant so it could resell them on the internet.

209.    After being notified of this prohibition, Defendant continued to intentionally induce one or more of Hayward's Authorized Sellers to breach their agreements by continuing to acquire products from Hayward's Authorized Sellers for the purposes of selling them on the internet.

210.    In inducing Hayward's Authorized Sellers to breach their contracts with Hayward, Defendant acted with a wrongful purpose—specifically, unlawfully infringing upon and materially damaging the value of the Hayward Trademarks by reselling the products they obtained from Authorized Sellers in violation of their contracts.

211.    Defendant also acted with wrongful means—specifically, upon information and belief, Defendant concealed and continue to conceal its intent to resell the Hayward Products when it purchases them from Authorized Sellers.

212.    Because Authorized Sellers are prohibited by contract from selling products to persons or entities who are not authorized sellers but intend to resell the products, Authorized Sellers would not have sold products to Defendant if they had known that Defendant intended to resell those products.

213.    Defendant knew that Authorized Sellers would be breaching their agreements by selling products to Defendant for purposes of resale, and would thus consider Defendant's intent to resell material to their decision to sell products to Defendant.

214.    Accordingly, Defendant's concealment of their intent to resell products is a wrongful omission of a material fact, which wrongfully induced Authorized Sellers to breach their agreements with Hayward.

215.    Authorized Sellers have complained to Hayward about Defendant's unauthorized reselling of Hayward Products and have threatened to discontinue their business relationship with Hayward because of Defendant's actions.

216.    Based on these facts, there is no justification for Defendant's actions.

217.    Hayward has no way of knowing the full extent of the sources of Defendant's products and, therefore, Hayward must take discovery in this action to learn the specific identities of the Authorized Sellers that sold Hayward Products to Defendant.  Defendant, however, knows the sources of the Hayward Products they have obtained and the basis for Hayward's claim of tortious interference.  Hayward's agreements with its Authorized Sellers are a specific class of contract that Defendant caused Authorized Sellers to breach when they purchased Hayward Products from Authorized Sellers for resale.

218.    Defendant's actions have caused injury to Hayward for which Hayward is entitled to compensatory damages in an amount to be proven at trial.

219.    Hayward is entitled to recover punitive damages because Defendant has acted with malice and aggravated and egregious fraud.

220.    Hayward is entitled to recover its attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## Unjust Enrichment

221.    Hayward repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

222.    Defendant has been unjustly enriched at the expense of Hayward.

223.    Defendant knowingly received and retained benefits including revenue, profits, and other economic advantages, derived from the unauthorized use of the Hayward trademarks, brand, goodwill, and quality control.

224.    Defendant's enrichment was obtained through improper and wrongful conduct, including the sale, distribution and promotion of unauthorized and infringing Hayward products.

225.    Hayward conferred these benefits indirectly and involuntary and Defendant's retention of such benefits without compensation is inequitable and unjust.

226.    As a result direct and proximate result of Defendant's unjust enrichment and unlawful conduct, Hayward has suffered damages.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Hayward asks for relief and judgment as follows:

A.    Judgment in favor of Hayward and against Defendant in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    a preliminary and/or permanent injunction barring Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") from the following conduct:

    i)    advertising or selling, via the internet or otherwise, all Hayward Products;

    ii)    using the Hayward Trademarks in any manner, including advertising on the internet;

    iii)    importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Hayward Products as well as any products bearing the Hayward Trademarks;

    iv)    disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which

41

contain the Hayward Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing this trademark;

C. In addition, a preliminary and/or permanent injunction requiring the Enjoined Parties to complete the following actions:

    i) to remove from the Enjoined Parties' websites any reference to any Hayward Products, or the Hayward Trademarks;

    ii) to request removal from internet search engines (such as Google, Yahoo!, and Bing) and to remove from the internet any uses of the Hayward Trademarks that associate Hayward Products or the Hayward Trademarks with the Enjoined Parties or the Enjoined Parties' website;

    iii) to remove unauthorized uses of the Hayward Trademarks from the internet, including from the website www.amazon.com;

D. An award of attorneys' fees, costs, and expenses;

E. Enhanced damages, including double or treble damages under the Lanham Act and/or treble damages under Section 75-16 of the UDTPA (N.C. Gen. Stat. § 75-16); and

F. Such other and further relief as the Court deems just, equitable and proper

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Hayward demands a trial by jury on all issues so triable.

Respectfully submitted this the 18th day of February 2026,


/s/ Patrick Grayson Spaugh
Patrick Grayson Spaugh (N.C. Bar No. 49532)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
Suite 3500
301 South College Street, Suite 3500
Charlotte, NC 28202
Patrick.Spaugh@wbd-us.com


Erik Paul Belt*
Anne E. Shannon*
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 449-6500
ebelt@mccarter.com
ashannon@mccarter.com

*Pro hac vice* application forthcoming

*Attorneys for Plaintiff Hayward Industries, Inc.*